## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNIVERSAL SERVICE ADMINISTRATIVE COMPANY,** a Delaware corporation 2000 L Street, N.W. Washington, D.C.  20036,<br><br>**Plaintiff,**<br><br>*v.*<br><br>**2000 L OWNER, L.L.C.,** a New York limited liability company 15 E. 26th Street, 7th floor New York, NY 10010,<br><br>**Defendant.** | **CIVIL ACTION NO.**<br><br><br><br>**COMPLAINT** |

Plaintiff Universal Service Administrative Company ("USAC") alleges against Defendant 2000 L Owner, LLC ("Landlord") as follows:

### NATURE OF THE ACTION

1.      This is an action for Landlord's breach of the covenant of quiet enjoyment, for anticipatory breach of the lease between USAC and Landlord, and for declaratory judgment. The action seeks to preserve the operational effectiveness of Plaintiff's business and require that defendant Landlord abide by the terms of the parties' lease.

### THE PARTIES

2.      Plaintiff USAC is a Delaware not-for-profit corporation having its principal place of business and offices located at 2000 L Street, N.W., Washington, D.C.  USAC was designated by the Federal Communications Commission ("FCC") as the administrator of the federal

Universal Service Support Mechanisms ("Support Mechanisms"), which were established by the Congress in the 1996 Telecommunications Act (the "1996 Act") to provide access to telecommunications capabilities in rural and other underserved communities throughout the country, and to eligible urban and rural schools and libraries.  Pursuant to Federal Communications Commission regulations, set forth at 47 C.F.R. Part 54, USAC collects funds from telecommunications carriers and uses these funds for payments to beneficiaries of the Support Mechanisms.  USAC houses a customer call center in its offices at 2000 L Street for responding to inquiries and requests for assistance by telecommunications carriers.  USAC audits telecommunications carriers and Support Mechanism beneficiaries to monitor compliance with 1996 Act and FCC regulations and to assist the FCC in preventing and detecting waste, fraud and abuse in the Support Mechanisms.  All of USAC's 450 employees (except for less than ten who telecommute) plus a varying number of onsite contractors are located in its offices at 2000 L Street, NW, that are the subject of this action.

3.      Defendant Landlord is a New York limited liability company with a principal place of business located, upon information and belief, at 15 East 26th Street, New York, NY. Upon information and belief, Landlord is owned or controlled by Rockrose Development Corporation, a New York corporation.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000.

5.      The Court has personal jurisdiction over defendant because it is doing business in the District of Columbia and the claims arise directly out of that business.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in the District of Columbia and the property at issue is located in the District of Columbia.

## GENERAL ALLEGATIONS

### The Lease

7.      USAC entered into the original lease with the then-owner of the property, TrizecHahn 2000 L Street LLC (the "Original Landlord"), Landlord's predecessor in interest, on or about July 9, 2003 (the "Original Lease").   A copy of the Original Lease is attached hereto as Exhibit 1.

8.      Pursuant to the Original Lease, USAC obtained a ten-year leasehold of approximately 28,900 square feet of rentable office space on the Second Floor of the commercial office building located on the Property.   Original Lease at § 1(P).   The space rented by USAC was to be and is used as the administrative and executive offices for USAC.   The space leased by USAC in the Building is hereafter referred to as the "Premises."

9.      Thereafter, a series of amendments were entered into with the Original Landlord. The Original Lease and all of the amendments thereto will be referred to herein collectively as the "Lease."

10.      a.      On or about March 2, 2005, USAC and the Original Landlord entered into a First Amendment to the Original Lease.  The purposes of the First Amendment were to (a) add 13,336 square feet on the Eighth Floor, bringing the total premises leased to about 42,236 square feet, and (b) extend the term of the Lease to September 30, 2015.

b.      Thereafter, on or about September 26, 2008, USAC and the Original Landlord entered into a Second Amendment to the Original Lease.  The amendment, among

other things, added 11,078 square feet on the Eighth Floor to USAC's Premises, bringing the total Premises to about 53,314 square feet.  The Third Amendment, executed on January 29, 2009, changed only the suite number of the new Eighth Floor space occupied under the Second Amendment.

      c.      On March 26, 2010, USAC and the Original Landlord entered into the Fourth Amendment to the Original Lease to add another 5,117 square feet of space on the Eighth Floor to the Premises, bringing the total Premises to about 58,431 square feet.

      d.      On October 21, 2011, USAC and the Original Landlord entered into the Fifth Amendment to the Original Lease.  Pursuant to the Fifth Amendment, USAC and the Original Landlord (i) extended the term of the Lease through November 30, 2020, (ii) granted USAC two five-year extension options after November 30, 2020, (iii) added 12,045 square feet on the Sixth Floor to the Premises, (iv) provided USAC an improvement allowance to refurbish the Premises, (v) granted USAC a right of first refusal to lease additional space on the Eighth Floor in the future, and (vi) granted USAC the option to terminate the entire Lease as of September 30, 2017, by giving landlord one year's notice and paying to landlord (A) the unamortized improvement allowance and (B) a termination fee.  A copy of the Fifth Amendment is attached hereto as Exhibit 2.

      e.      Last, on August 8, 2013, USAC and Original Landlord entered into the Sixth Amendment to the Original Lease.  Pursuant to the Sixth Amendment, USAC leased an additional 5,932 square feet on the Seventh Floor, bringing the total Premises to 78,010 square feet of space, now on the Second, Seventh and Eighth Floors of the Building.

     11.      On or about September 16, 2013, defendant 2000 L Owner, LLC, which is, on information and belief, an affiliate of New York City real estate developer Rockrose

Development Corporation, purchased the property at 2000 L Street, NW, Washington, DC, from the Original Landlord.  At the time of defendant's purchase, USAC was the tenant in good standing with respect to its Premises, at that time about 78,010 square feet, under the Original Lease, as modified by the First through Sixth Amendments.

12.     Following its acquisition of the Building, Defendant Landlord entered into two additional amendments to the Lease with USAC.

a.     On August 6, 2014, Defendant and USAC entered into the Seventh Amendment to the Lease.  Under the Seventh Amendment, among other provisions, (i) USAC exchanged all of its space on the Sixth, Seventh and Eighth Floors of the Building for the entirety of the Third Floor (about 46,587 square feet), which was to be delivered before May 15, 2015, and (ii) Landlord informed USAC that it intended to perform a "Renovation" that would consist of "improved common areas and operating systems, additional floors and a rooftop terrace." Nothing in the disclosed and agreed "Renovation" included any plan to enter, seize or occupy areas of USAC's Premises.  The Seventh Amendment promised that such work would neither decrease the level of Building services (including rest room facilities), nor deprive USAC of reasonable access to the Premises, and would be performed outside of business hours and not interfere in any material respect with USAC's use of the Premises.  A copy of the Seventh Amendment is attached hereto as Exhibit 3.

b.     On December 17, 2014, Defendant and USAC entered the Eighth (and most recent) Amendment to the Lease.  In the Eighth Amendment, (i) USAC leased an additional 5,932 square feet on the Seventh Floor, making the Premises a total of about 81,781 square feet, (ii) swapped 1,288 square feet on the eastern side of the Second Floor for 1,659 square feet on the western side of the Second Floor to facilitate Landlord's redevelopment of the Second Floor

common areas, and (iii) Landlord agreed to renovate all three sets of restrooms within USAC's

Premises, one at a time, by December 17, 2015.  In entering into the Eighth Amendment,

Landlord again did not disclose extensive renovation plans beyond the Renovation agreed to in

the Seventh Amendment to add floors to the building, and specifically did not disclose any

intention to physically seize portions of USAC's Premises.  A copy of the Eighth Amendment is

attached hereto as Exhibit 4.

13.     The Lease entitles USAC to the full use and benefit of the 81,781 square feet of

rental office space for which USAC is paying rent.  The Lease expressly states that USAC is

entitled to the quiet enjoyment of the Premises and the absence of disturbances by Landlord:

> Landlord covenants that … if Tenant shall pay all Rent and perform all of
> Tenant's other obligations under this Lease, Tenant shall have the right, during
> the Term and subject to the provisions of this Lease, to quietly occupy and enjoy
> the Premises without hindrance by Landlord or its successors and assigns.

Exhibit 1 (Original Lease), § 27.

14.     The Lease also provides USAC with further assurances of non-disturbance of its

use of the Premises in the event Landlord needs to enter USAC's Premises in order to make

alterations, repairs or renovations.  If Landlord needs to enter to make alterations or repairs, the

Lease requires that "Landlord shall use reasonable efforts to avoid material interference with

Tenant's business operations in Landlord's exercise of any of its rights under this Section 11."

Exh. 1 (Original Lease), § 11.  *Accord* Exh. 3 (Lease 7th Amendment ("Am.")), § 10(r),

amending Lease § 30 (Landlord "shall use commercially reasonable efforts to minimize

interference with Tenant's normal business operations in the Premises in connection with the

exercise of any rights by Landlord under this Section 30…").  And if Landlord needs to make

renovations, the Lease similarly provides that Landlord "shall use commercially reasonable

efforts in connection with the Landlord Work not to interfere in any material respect with

Tenant's use of the Premises."  Exh. 3 (Lease 7th Am.), § 10(g)(iv)(b).  Moreover, Landlord

covenanted that it "shall perform [any such renovations] so that the level of Building services

[including rest room facilities] shall not decrease in any material respect from the level required

of Landlord in this Lease," *id.* at § 10(g)(iv)(c), and would "perform the [work] so that Tenant is

not deprived of reasonable access to the Premises," *id.* at § 10(g)(iv)(d).  As additional protection

for USAC, the Lease provides that Landlord "shall perform [any renovations] so that all items

brought into the Premises shall be removed prior to the start of the next business day … except in

any event for the storage of construction *equipment* in the Premises solely during the period in

which the work associated with such Renovation is occurring in any portion of the Premises."

*Id.* at § 10(g)(iv)(e) (emphasis added).

        15.     The Lease also provides that USAC is entitled to elevator service and restroom

facilities.  Exh. 1 (Original Lease), §§ 12(A)(1) & (5).  In the case of repairs or renovations, the

Lease only grants Landlord the right "to *interrupt* or *temporarily* suspend Building services and

facilities … as long as the Premises remain tenantable for the conduct of Tenant's business….,"

Exh. 1 (Original Lease), § 30(D) (emphasis added).  Lease § 12(B) reinforces the temporary

nature of any such interruption or suspension of required services by providing that should any

such failure of services occur for a period of five consecutive days "then the Base Rent and

Additional Rent payable under this Lease shall be abated from the sixth consecutive day until

such service shall be restored."  Exh. 1 (Original Lease), § 12(B).

        16.     The Lease does not permit Landlord to construct new walls, block off existing

walls, remove the exterior walls of the Building, or take 25-60% of USAC's offices at any given

time in order to make renovations.

**Landlord's Planned Renovations**

17.     Upon information and belief, Landlord has planned significant renovations to the Building since it purchased the Building and Property in September 2013.  Landlord's president was quoted at the time as saying "We know we're going to improve the building because it's sort of a B-plus asset in an A location."

18.     On November 6, 2014 — and without disclosure to USAC, with which it was at the same time negotiating the Eighth Amendment — Landlord purchased 177,659 square feet of transferrable development rights ("TDRs").  The effect of that acquisition of TDRs was that about 180,000 square feet of additional gross floor area could be incorporated into the Building at 2000 L Street, N.W.

19.     During the negotiation of the Seventh Amendment to the Lease in August 2014, Landlord disclosed to USAC that it was contemplating a "Renovation" that would consist of "improved common areas and operating systems, additional floors and a rooftop terrace." Landlord never mentioned any plan to physically seize and occupy portions of USAC's Premises on the 2d and 3d Floors.  Exh. 3 (7th Am.), § 10(g).  If Landlord would have made its extensive remodeling plans known to USAC, USAC would not have agreed to the 7th and 8th Amendments.

20.     On or around April 30, 2015, Landlord met with USAC and provided a copy of its "Tenant Impact Drawings" (the "Impact Drawings").  The Impact Drawings were the first time that USAC was informed of Landlord's extensive Building renovation plans and the severe effect those plans would have on USAC's occupancy and enjoyment of its Premises.  The Impact Drawings describe an intense and extensive, long-term reconstruction of the entire Building that will *physically seize* large portions of the USAC Premises for lengthy periods of time and

dramatically reduce bathroom and elevator service, and access to and within the USAC

Premises, for over two years.  The Impact Drawings are attached hereto as Exhibit 5.

21.     Landlord's plan, as set forth in its Impact Drawings, will unduly interfere with

and materially adversely impact USAC's business operations and breach the Lease, as outlined

below.

   a.     The bathrooms within USAC's 2d Floor Premises, and on the western side

of USAC's 3d Floor Premises, will be entirely taken for a full year, from July 2015[1]

through June 2016.  Impact Drawings ("ID"), pp. 29 & 25 & 28.  Moreover, it appears

that the common area bathrooms on the 2d Floor — the only other bathrooms on the 2d

Floor — will be within a "construction zone" for two full years, from July 2015 through

June 2017.  ID p. 31.

   b.     The Impact Drawings indicate that elevator service will be reduced by

50% for almost three years, from July 2015 through March 2018, ID, pp. 29 & 32.

   c.     Approximately five offices on the east side of the 2d Floor of the USAC

Premises will be entirely taken from USAC for Landlord's occupancy for approximately

two years, from July 2015 through June 2017.  ID p. 31.  An even greater number of

offices, approximately 12 in all, will be taken in the same area during the first nine

months of that period, from July 2015 through March 2016.  ID p. 30.

   d.     About 33 offices on the east side of the 3d Floor Premises will be taken

for about nine months from January 2016 through September 2016.  ID p. 15.  This

---

[1]     Landlord has been delayed in the implementation of the Impact Drawings, apparently because it
does not have all the District of Columbia permits necessary to execute all of the work.  While the *dates*
specified in the Impact Drawings have slipped, the scope of the work and the amount of time it will take
has apparently not changed.

taking will overlap for three months (from July to September 2016) with the taking of L Street-facing offices on that same 3d Floor, thus resulting in the taking of about *60%* of USAC's 3d Floor office space during the Summer of 2016.  ID pp. 15 & 17.

      d.     Approximately 21 offices along L Street will be seized on each of the 2d and 3d Floors from July 2016 through December 2016.  ID pp. 22 & 17.

      e.     Approximately 17 offices on the on the northwest, west and southwest side of the USAC Premises on each of the 2d and 3d Floors will be taken for about nine months from January to September 2017.  ID pp. 23 & 18.

      f.     Another 20 offices on the south side of the USAC Premises on each of the 2d and 3d Floors will be taken for about six months from October 2017 through March 2018.  ID pp. 24 & 19.

      g.     *All* of USAC's exterior window offices on the 7th Floor, about 12 offices, will be taken for nine months, from January through September 2016, ID p. 27, leaving the remainder of USAC's staff on that floor separated from their related managers. During the July through September portion of that period the adjacent 7th Floor restrooms will also be out of service, ID p. 33.

      h.     At least four exterior view window offices will become offices with no windows on both the 2d and 3d Floors permanently.  ID pp. 21 & 14.

      i.     Given that there are approximately 53 offices on the 2d Floor, the Impact Drawings propose to physically seize about 40% of USAC's 2d Floor offices for almost two full years, from July 2016 through March 2018.  On the 3d Floor, about one-quarter to three-eighths of USAC's offices will be seized for an even longer period, from January 2016 through March 2018.  And the seizure of the exterior offices affects even more

employees than the number of offices seized.  These offices are occupied by management

that generally oversees a team of employees that sit in close proximity; in order for

USAC to remain productive and provide the best customer service, the entirety of

USAC's team structure needs to remain intact, thus requiring those employee teams to be

relocated with their respective management.

22.     The seizures and interruptions outlined above will substantially disrupt USAC's

business and materially reduce the effectiveness of its operations from a cost and customer

service perspective.

23.     Neither the scope of the work Landlord now proposes to do *within USAC's
Premises* nor the manner in which Landlord proposes to do the work *within USAC's Premises*
was contemplated or within the scope of the "Renovation" disclosed to USAC and described in

§ 10(g)(iv) of the Lease 7th Amendment.

**Failure of Discussions to Resolve Dispute**

24.     Upon learning on April 30, 2015 of Landlord's proposed renovations and the

taking of USAC's Premises, USAC sought a substantive and meaningful dialogue with Landlord

regarding the proposed renovations, the avoidance of disruption to USAC's business operations

and Landlord's plans for the Premises.  USAC's efforts to engage in such a substantive dialogue

through the spring, summer and early fall of 2015, including its requests for specific construction

plans and timetables, were not productive, in that Landlord declined to present any realistic

options for addressing USAC's concerns.

25.     By letter dated June 5, 2015 to Landlord, USAC's counsel made clear that the

planned renovations would unreasonably interfere with USAC's business operations.  USAC

even proposed that it was willing to terminate its Lease in the Building to facilitate Landlord's renovation plans if Landlord would delay its work until USAC could locate alternative premises.

26.     On June 19, 2015, Landlord's counsel rejected USAC's proposal to terminate the Lease if Landlord would delay its work until USAC could locate alternative premises, stated its view that the Lease "contemplates disruptions attendant to a renovation of the Building," and that it expected Tenant to acquiesce and not interfere with its plans to conduct "alterations, additions and improvements to the restrooms and the Building exterior façade."

27.     USAC and Landlord's representatives have also engaged in unsuccessful discussions to attempt to avoid the material disturbance in USAC's business contemplated by the Impact Drawings.  USAC has reiterated its view that Landlord did not have the right under the Lease to carry out the work presented in the Impact Drawings.  Landlord has reiterated its view that it has the right to conduct the work outlined in the Impact Drawings under the "Renovations" clause of the 7th Amendment.  Landlord made clear its belief that, regardless of whether USAC found any of Landlord's proposals acceptable, Landlord would proceed with the renovation as planned, starting in or about July (now October) 2015, in the belief that it has the unfettered right to do so under the Lease.

28.     Upon information and belief, Landlord's unresponsiveness to USAC's concerns was intended to pressure USAC into acquiescing in Landlord's proposed arrangements in the limited time remaining before renovation begins.

29.     Landlord's proposed construction would be both highly disruptive to USAC's work and violate the terms of the Lease.  Much of USAC's work requires quiet "thinking" and "strategy" time, and collaborative effort that requires that the staff be accessible to each other. Also, USAC's call center and many other USAC staff are talking with telecommunications

carriers and Support Mechanism beneficiaries throughout the day answering questions and helping them solve problems related to their participation in federal Universal Service, which call center and discussions would be unavoidably and materially disturbed by heavy construction noise occurring about them.  The taking of a significant portion of the Premises, the interruption of services that are to be provided under the Lease, and the disruption caused by the renovation work and erection of partitions will materially and adversely interfere with USAC's business, the meetings and other activities in the Premises, and consequently its service to its customers and its business reputation.

**Landlord Has Physically Seized Portions of USAC's Premises**

30.    Under cover of darkness and after business hours, on the night of October 21, 2015, without USAC's approval, Landlord caused its construction workers to physically enter USAC's Premises.  During the night, Landlord caused the construction of a plywood wall through the middle of USAC's copy and production center, physically seizing approximately 150-175 square feet of USAC's leased Premises.  When USAC employees arrived at work on the morning of October 22, 2015, they found that approximately half of this work room had been seized.  *See* Photos attached at Exhibit 6.

31.    All of these breaches and anticipated breaches of Plaintiff's right to quiet enjoyment guaranteed under the Lease have caused, are causing, and/or will cause irreparable harm.

**FIRST CLAIM FOR RELIEF**
**(Breach of the Covenant of Quiet Enjoyment)**

32.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 31 as if they were fully set forth herein.

33.    Section 27 of the Lease provides that "Tenant shall have the right … to quietly

occupy and enjoy the Premises without hindrance by Landlord or its successors and assigns."

34.     USAC has a valid lease of the Premises.

35.     Landlord has physically seized a portion of USAC's Premises.

36.     Landlord has stated its intention to seize other space, including bathrooms, staircases and elevators, and has stated its intention to seize other parts of USAC's offices, including thousands of square feet of office space.

37.     Landlord's current interference with USAC's actual possession and use and enjoyment of the Premises is substantial.

38.     Landlord's conduct has physically occupied and evicted USAC from substantial parts of the leased Premises, such that USAC has physically lost the possession and use of part of its Premises.

**SECOND CLAIM FOR RELIEF**
**(Actual and/or Anticipatory Breach of Lease)**

39.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 38 as if they were fully set forth herein.

40.     The Lease entitles USAC to quietly have and enjoy the Premises during the term without hindrance by anyone claiming by, through or under Landlord, except as specifically provided in the Lease.  Exh. 1 (Original Lease), § 27.  The Lease requires Landlord to use reasonable efforts to avoid disruption of USAC's business during any entry upon the Premises or during the performance of any renovation work performed.  *Id.*; *see also* Exh. 3 (7th Am.), § 10(g)(iv).  The Lease also provides that Landlord shall perform any work "so that Tenant is not deprived of reasonable access to the Premises."  Exh. 3 (7th Am.), § 10(g)(iv)(d).  The Lease also requires that during any work "the Level of Building services shall not decrease in any material respect...."  Exh. 3 (7th Am.), § 10(g)(iv)(C).

41.     The Lease does not allow Landlord to seize substantial parts of the Premises for extended periods of time.

42.     Landlord has stated that it believes the Lease allows it to seize portions of USAC's Premises as, when and where it sees fit to complete the work in the Impact Drawings. Landlord's seizure of USAC's space on October 21, 2015, indicates that Landlord intends to operate unilaterally based on its reading of the Lease.

43.     Under the Impact Drawings as proposed by Landlord on April 30, 2015, Landlord has clearly, forcefully, and unequivocally repudiated and breached the Lease by its assertion that USAC shall be deprived of the quiet enjoyment of the Premises, will be denied reasonable access to all or a significant portion of the Premises, will have bathroom and elevator service reduced by 50%, and will have its business disrupted without Landlord taking reasonable efforts to avoid disruption of USAC's business.  Landlord has communicated, by both word and/or conduct, unequivocally and positively its intention not to perform its obligations under the Lease.

44.     As a direct and proximate result of Landlord's actual and/or anticipatory breaches of the Lease, USAC has already suffered, and will continue to suffer additional injury and damages.

**THIRD CLAIM FOR RELIEF**
**(Anticipatory Breach of Eighth Amendment to Lease)**

45.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 44 as if they were fully set forth herein.

46.     On December 17, 2014, Defendant and USAC entered the Eighth (and most recent) Amendment to the Lease.  In § 5(b) of the Eighth Amendment Landlord agreed to renovate all three sets of restrooms within USAC's Premises, one at a time, by December 17, 2015.  Landlord promised:

15

> Landlord, at Landlord's sole cost and expense, shall remodel and refurbish the restrooms on the third (3rd) floor of the Building and the internal men's and women's restrooms located within Suite 200 (collectively, the "**Restroom Work**"). The Restroom Work shall be completed no later than twelve (12) months from the Effective Date of this Amendment [which occurred in December 2014]. Landlord shall not be engaged in the Restroom Work with respect to more than one (1) set of men's/women's restrooms at any one time.

Exh. 4 (8th Am.), § 5(b).

47.     Landlord has not commenced any work to implement the promise set forth in § 5(b) of the Eighth Amendment.

48.     Landlord has specifically stated its intent not to conduct the work set forth in the Eighth Amendment and not to complete the work at the end of 12 months from the Effective Date (which was December 2014). Landlord has communicated, by both word and/or conduct, unequivocally and positively its intention not to perform its obligations under the Eighth Amendment to the Lease.

49.     As a direct and proximate result of Landlord's anticipatory breaches of the Lease, USAC has already suffered, and will continue to suffer additional injury and damages.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Relief)**

50.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 49 as if they were fully set forth herein.

51.     The Lease requires that if Landlord needs to enter USAC's space to make alterations or repairs "Landlord shall use reasonable efforts to avoid material interference with Tenant's business operations in Landlord's exercise of any of its rights under this Section 11." Exh. 1 (Original Lease), § 11. And the Lease specifically provides that during any renovations Landlord "shall use commercially reasonable efforts to minimize interference with Tenant's

normal business operations" and "shall use commercially reasonable efforts in connection with

the Landlord Work not to interfere in any material respect with Tenant's use of the Premises,"

Exh. 3 (7th Am.), § 10(g) & § 10(g)(iv)(b), and that during any work "Tenant is not [to be]

deprived of reasonable access to [its] Premises," *id.* at § 10(g)(iv)(d).

52.     Landlord has stated that it intends to carry out the construction project set forth in

the Impact Drawings.  The Impact Drawings provide that Landlord will seize large portions of

USAC's Premises — anywhere from 25% to 60% of the offices, and 50% of the elevators and

restrooms — for extended and potentially uncertain periods of time, displace USAC employees

from their offices, unreasonably disrupt USAC's work and use of the Premises, compel the

reconfiguration of USAC's offices, force USAC employees and guests to abandon the Premises

for periods of time due to excessive noise and disruption, loss of light, air quality and services,

and require the Landlord to have access to and the exclusive use of substantial portions of the

Premises for extended, uncertain periods of time with attendant displacement of USAC

personnel and activities.

53.     Landlord contends that the Impact Drawings comply with its obligations under

the Lease and that it is entitled to conduct the work outlined in the Impact Drawings.  USAC

contends that the Lease, both as originally written and as modified by the "Renovation" clause of

the 7th Amendment, do not permit Landlord to seize large portions of USAC's Premises, and

that the allegedly ameliorative options proposed by Landlord do not constitute "reasonable

efforts to avoid material interference with Tenant's business operations" and otherwise violate

the Lease.  Exh. 1 (Original Lease), § 11.

54.     As such, an actual justiciable case or controversy exists between the parties with

regard to whether Landlord's conduct constitutes a breach of the covenant of quiet enjoyment

and/or a breach of the Lease, and as to whether the Impact Drawings proposed by Landlord constitute "reasonable efforts ...to avoid disruption to Tenant's business" as required by the Lease. *Id.*

55.     Accordingly, USAC requests that the Court issue judgment in its favor, stating and declaring that (a) implementation of the Impact Drawings constitutes a breach of the covenant of quiet enjoyment, (b) the Impact Drawings are not consistent with or permitted by the "Renovation" clause of the Seventh Amendment, (c) the Impact Drawings do not constitute "reasonable efforts ...to avoid disruption to Tenant's business" as required by the Lease, (d) Landlord's plans under the Impact Drawings violate the Lease requirement that even during Landlord's work "Tenant is not deprived of reasonable access to the Premises," and (e) the Lease and amendments do not contemplate or permit the extensive taking of Tenant's Premises and the consequent undue interference proposed in the Impact Drawings.

### FIFTH CLAIM FOR RELIEF
### (Breach of Lease — Specific Performance)

56.     Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 55 as if they were fully set forth herein.

57.     Plaintiff and Defendant (and Defendant's predecessor) entered into a valid and enforceable lease agreement for the Premises at 2000 L Street, N.W.

58.     Plaintiff's Lease remains valid.

59.     The Lease guarantees Plaintiff the right to quiet enjoyment of the demised premises and prohibits Landlord from seizing Plaintiff's Premises or material parts thereof.

60.     Defendant has breached, and intends to further breach, the Lease by implementing its Impact Drawings and seizing space leased to and occupied by Plaintiff under the Lease, and by reducing or eliminating the services required under the Lease.

61.     If Defendant continues with its renovation plans and with the implementation of the Impact Drawings, it will continue to violate Plaintiff's Lease by seizing Plaintiff's Premises and reducing services required under the Lease.

62.     The steps Defendant has taken and intends to take under the Impact Drawings have caused or will cause severe deterioration in Plaintiff's ability to perform its FCC-required activities, and will cause incalculable financial losses and irreparable harm.  Defendant's conduct will also harm the goodwill and reputation of USAC.

63.     Plaintiff has a specific interest in the specific property at issue.  Plaintiff's business is specifically designed to be operated in the specific Premises at issue.

64.     Because no adequate remedy at law exists to address Defendant's breaches and its continued attempts to carry out its plans for renovation of the remainder of its building under the Impact Drawings, Plaintiff respectfully asks the Court to require Defendant to specifically perform its requirements under Plaintiff's Lease and to provide Plaintiff with quiet enjoyment of the Premises, and to permanently enjoin Defendant, while Plaintiff's Lease is in effect, from taking any steps to carry out the Impact Drawings that will result in the seizure of portions of Plaintiff's Premises or the reduction in services under the Lease.

## SIXTH CLAIM FOR RELIEF
### (Fraud in the Inducement)

65.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 64 as if they were fully set forth herein.

66.     Neither the scope of the work Landlord now proposes to undertake nor the manner in which Landlord proposes to undertake it was contemplated or within the scope of the "Renovation" disclosed to USAC and defined in § 10(g)(iv) of the Seventh Amendment.  In fact,

the exterior "re-skinning" renovation that Landlord now proposes was never disclosed nor

contemplated by nor approved under the Seventh Amendment.

67.     Similarly, Landlord never disclosed during the negotiation of its "Renovation," as

defined in the Seventh Amendment, that it intended to close two of USAC's three bathrooms for

over a year as part of the "Renovation" under the Seventh Amendment.  That no such plan was

contemplated as part of the Seventh Amendment is confirmed by the fact that when the parties

negotiated the Eighth Amendment in November 2014 Landlord agreed to renovate all three sets

of Plaintiff's in-Premises restrooms, one at a time, before the end of December 2015.  Either the

defined "Renovation" in the Seventh Amendment did not contemplate closing two of USAC's

three restrooms, or Landlord committed fraud in inducing the execution of the Seventh

Amendment by failing to disclose that fact, or Landlord committed fraud in the inducement of

the Eighth Amendment by promising to renovate all three of USAC's restrooms by the end of

2015 when it had already decided that it would not be doing so.

68.     Under Landlord's own present interpretation of the "Renovation" clause of the

Seventh Amendment, it is now clear that the Landlord always intended to re-skin the building

and seize large amounts of USAC's space and shut down two of the three in-Premises bathrooms

when it negotiated the Seventh Amendment, facts that it never disclosed to USAC at the time

that USAC and Landlord entered into the Seventh Amendment.  Landlord's own present

interpretation of the "Renovation" clause of the Seventh Amendment as permitting it to seize two

of USAC's three sets of restrooms into 2016-17 means that its promise in the Eighth Amendment

to renovate all three of USAC's restrooms before the end of 2015 was false.  Both of these

actions by the Landlord constitute an omission of material fact or a material misrepresentation of

what work was intended under the "Renovation" clause of the Seventh Amendment.

69.    Whether Landlord intended to seize USAC's Premises was a material fact in negotiating the Seventh Amendment.  Whether Landlord actually intended to renovate USAC's restrooms was a material fact in negotiating the Eighth Amendment.  USAC would never have entered into the Seventh Amendment had it known that Landlord intended to seize large portions of USAC's offices to enable it to re-skin the building and shut down two of the three in-Premises bathrooms.  USAC would never have entered into the Eighth Amendment had it known that Landlord did not intend to renovate the USAC restrooms as promised in that Eighth Amendment.

70.    Landlord committed fraud in the inducement of the Seventh Amendment when it failed to disclose its intended plans to seize portions of USAC's Premises during its "Renovation" and did so with knowledge of the materiality of its omission and with the intent to deceive USAC.  It committed fraud in the Eighth Amendment in December 2014 when it failed to reveal to Plaintiff that it did not intend to renovate all three of USAC's restrooms by the end of 2015 and did so with knowledge of the falsity of its representation that it would renovate the restrooms before the end of 2015 and with the intent to deceive USAC.

71.    USAC relied on Landlord's representations when it entered into the Seventh and Eighth Amendments that USAC would continue to use the Premises without interruption by the Landlord and that USAC would be able to continue its quiet enjoyment of the space.

72.    As a direct and proximate result of Landlord's fraud in the inducement of the Seventh Amendment and the Eighth Amendment, USAC has already suffered, and will continue to suffer additional injury and damages.

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays that the Court:

A.    Enter judgment in favor of USAC on all counts of this Complaint;

21

B.      Enter an Order awarding USAC monetary damages in an amount in excess of $75,000, such amount to be determined at trial, plus interest and costs;

C.      Enter judgment stating and declaring that the Impact Drawings do not constitute "reasonable efforts …to avoid disruption to Tenant's business" as required by the Lease;

D.      Enter judgment stating and declaring that the plans revealed in the Impact Drawings to seize portions of USAC's Premises are not authorized by the "Renovation" clause of the Seventh Amendment or otherwise permitted under the Lease;

E.      Enter judgment stating and declaring that Landlord does not have the right under the Lease to seize and to exclude USAC from substantial parts of its Premises for extended periods of time, as proposed under the Impact Drawings;

F.      Enter an order preliminarily and permanently enjoining Landlord (1) from entering the Premises to conduct any work related to renovations, erecting any temporary partitions, depriving USAC of the use of any portion of the Premises, removing the existing window wall system from the Premises or commencing work on the exterior of the Premises that affects USAC's use of and access to the Premises, (2) to return any seized portions of USAC's Premises to USAC, and (3) to restore lost services such as bathrooms, elevators, HVAC, and stairways.

G.      Enter an Order awarding USAC as the prevailing party pursuant to § 19(I) of the Lease, as amended by § 10(l)(vii) of the 7th Amendment, a sum equal to all actual legal fees, costs and disbursements reasonably incurred by USAC in any way related to or arising out of this action, up to a maximum of $250,000; and

H.      Grant such other and further relief as justice so requires, or as may be necessary or proper to aid enforcement of a declaratory judgment in favor of USAC.

DATED: October 23, 2015                    Respectfully submitted,

                                           */s/  Donald B. Mitchell, Jr.*
                                           Donald B. Mitchell, Jr., D.C. Bar No. 358751
                                           Karen S. Vladeck, D.C. Bar No. 1000311
                                           **ARENT FOX LLP**
                                           1717 K Street, N.W.
                                           Washington, DC  20006-5344
                                           (202) 857-6000 – Telephone
                                           (202) 857-6395 – Facsimile
                                           Donald.Mitchell@arentfox.com

                                           *Attorneys for Plaintiff*
                                           *Universal Service Administrative Company*